**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| BUCKEYE RETIREMENT CO., LLC, LTD | § | |
| | § | |
| v. | § | Case No. 4:07-cv-181 |
| | § | |
| VENON LEE LAUX and | § | |
| PAMELA SUE LAUX | § | |

## <u>MEMORANDUM OPINION & ORDER</u>

Pending before the Court is an appeal by Creditor Buckeye Retirement Co., LLC, Ltd. of a decision rendered by United States Bankruptcy Judge Brenda T. Rhoades discharging Venon and Pamela Laux's debt obligations to Buckeye. After considering the arguments of counsel, the evidence of record, and the applicable law, the Buckeye's points of error are OVERRULED. The bankruptcy court's decision is AFFIRMED.

## I. BACKGROUND

In January 1999, Vernon and Pamela Laux (" the Debtors") applied for a Bank of America loan to be used for Circa 2K Gifts, Inc, their a closely held corporation. In their personal statement provided to Bank of America as part of the loan application, the Debtors stated that they had a net worth of over $750,000 and claimed over $400,000 in liquid assets, substantial equity in their home and automobiles, and jewelry, silver, artifacts, antiques, stamp and coin collections valued at $96,000.00. With the Debtors individually guaranteeing the loan, Bank of America approved a loan for $400,000.

Circa 2K defaulted on the loan in 2000, and Bank of America foreclosed on its collateral. Upon the liquidation of the collateral, the Debtors believed that the loan had been satisfied, in part, because the Debtors were not contacted by Bank of America or anyone else regarding the loan until 2004.

In 2002, the Cadle Company purchased the loan from Bank of America.  The Cadle Company later assigned the loan to Buckeye.  After unsuccessful collection efforts, Buckeye filed suit to force the Debtors to honor their guarantees.  The Debtors failed to defend the suit and a default judgment was rendered against the Debtors for over $529,000.

On June 6, 2005, the Debtors filed for Chapter 7 Bankruptcy.  After the Debtors filed their schedules and statement of financial affairs (collectively "Schedules"), the Debtors were apprehensive as to whether they had disclosed everything necessary.  They soon sought advice from two other attorneys they eventually retained.  Before the creditors' section 341 meeting, the Debtors took the advice of their new attorneys and amended seventy-five items in their Schedules.

Buckeye initiated this adversary proceeding by filing a complaint seeking a determination that the Debtors should be denied discharge of their debt pursuant to 11 U.S.C. §§ 727(a)(2), (3), (4), (5), and (7) and 11 U.S.C. § 523(a)(2).  After the trial, Judge Rhoades issued Findings of Fact and Conclusions of Law overruling Buckeye's objections to discharge.  Buckeye then, after retaining new counsel, filed its Notice of Appeal contending that:

> (1) The bankruptcy court erred in granting judgment to the Debtors on Buckeye's cause of action pursuant to 11 U.S.C. § 727(a)(4)(A) because:
>
>> (a) the evidence clearly reflected that the Debtors had knowledge of items omitted and misrepresented in their original and amended Schedules;
>>
>> (b) the bankruptcy court erroneously concluded that the Debtors amendments "cured" the false representations and omissions in the original Schedules; and
>>
>> (c) the bankruptcy court failed to consider whether the Debtors exhibited a reckless disregard for the truth, which is legally equivalent to fraudulent intent.
>
> (2) The bankruptcy court erred in granting judgment to the Debtors pursuant to 11

U.S.C. § 727(a)(2) because Buckeye demonstrated the Debtors' fraudulent intent and the court failed to consider whether the Debtors' reckless disregard for the truth satisfied the intent requirement.

(3) The bankruptcy court erred in granting judgment to the Debtors pursuant to 11 U.S.C. § 727(a)(3) because the Debtors destroyed and failed to maintain documents, records, and papers from which their financial condition and business transactions might be ascertained.

(4) The bankruptcy court erred in granting judgment to the Debtors pursuant to 11 U.S.C. § 727(a)(5) because the Debtors failed to satisfactorily explain a loss or deficiency of assets to meet the Debtors' liabilities, including the total loss of $96,000 asset collection, the loss of available cash assets previously available to the Debtors, and the loss of property previously stored in the Debtors' self-storage units.

## II. ANALYSIS

### A. Jurisdiction and General Standard of Review

This Court has jurisdiction to consider this appeal pursuant to 28 U.S.C. § 158(c)(2), which provides that an appeal from the bankruptcy court to the district court "shall be taken in the same manner as appeals in civil proceedings generally are taken to the court of appeals from the district courts."  When reviewing the case, the "district court functions as an appellate court and applies the same standard of review generally applied in federal appellate courts."  *Webb v. Reserve Life Ins. Co. (In re Webb)*, 954 F.2d 1102, 1103-04 (5th Cir. 1992).  Pursuant to the Federal Rules of Bankruptcy Procedure Rule 8013, when reviewing a decision of the bankruptcy court, the district court must accept the bankruptcy court's findings of fact unless clearly erroneous and examine *de novo* the conclusions of law.  *See Carrieri v. Jobs.com Inc.*, 393 F.3d 508, 517 (5th Cir. 2004); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1307-08 (5th Cir. 1985).  Under the clearly erroneous standard, the court will only reverse if, after reviewing all of the evidence in the record, the court is "left with the definite and firm conviction that a mistake has been made" *Walker v. Cadle Co. (In re Walker)*, 51 F.3d

562, 565 (5th Cir. 1995) (quoting *Allison v. Roberts (In re Allison)*, 960 F.2d 481, 483 (5th Cir. 1992)).

Moreover, a bankruptcy court's findings based on credibility determinations are entitled to significant

weight because the bankruptcy judge is "in a far superior position to gauge the debtor's credibility than"

a court reviewing only the cold record.  *Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367,

373 (5th Cir. 2005) (quoting *First Nat'l Bank LaGrange v. Martin (In re Martin)*, 963 F.2d 809, 814

(5th Cir. 1992)).

### B. Section 727(a)(4)(A)

In its first point of error, Buckeye argues that the Debtors' debt is not dischargable because the

Debtors knowingly and fraudulently made false accounts in their Schedules.  Section 727(a)(4)(A) of

the United States Bankruptcy Code, entitled "Discharge," states in relevant part: "The court shall grant

a discharge, unless . . . the debtor knowingly and fraudulently, in . . . the case made a false oath or

account."  11 U.S.C. § 727(a)(4)(A).  "The objecting party has the burden of proving that (1) the debtor

made a false statement under oath; (2) the statement was false; (3) the debtor knew the statement was

false; (4) the debtor made the statement with fraudulent intent; and (5) the statement was material to

the bankruptcy case."  *Sholdra v. Chilmark Fin. LLP (In re Sholdra)*, 249 F.3d 380, 382 (5th Cir. 2001).

The bankruptcy court found that Buckeye failed to establish elements three and four.

On appeal, Buckeye argues that the bankruptcy court clearly erred in failing to find that the

Debtors knew their statements were false; clearly erred in finding that the Debtors' amendments cured

the false representations and omissions; and erred in failing to consider whether the Debtors exhibited

a reckless disregard for the truth.

### 1. The Debtors did not know their statements were false

The bankruptcy court found that the Debtors did not know, when they filed their original

Schedules, that they had omitted items from their Schedules.  The court found that the failure to include the omitted items was an honest oversight based, in part, on the advise of their former counsel.  The court went on and found that the Debtors were "not aware of the *Beaubouef* decision and did not understand 'materiality' in the context of the Fifth Circuit's opinion."  Based on that statement, Buckeye alleges that the bankruptcy court confused what the Debtors knew with what the Debtors later claimed to have thought was important.

The Fifth Circuit Court of Appeals *Beaubouef* decision concerns the fifth element under Section 727(a)(4)(A), not the knowledge element.  *See Beaufouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992).  In *Beaubouef*, the debtor argued that even if he knowingly and fraudulently made false statements, his debt should be discharged because the false statements were not material to the bankruptcy case.  *Id.*  The Fifth Circuit held that a debtor may not escape a "denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless...holding." *Id.* Unlike the debtor in *Beaubouef*, the Debtors testified that they did not know their statements were false. This is not a *Beaubouef* situation.  Though the bankruptcy court alluded to the *Beaubouef* decision, there is no indication that the bankruptcy court misapplied the legal standard when it found that the Debtors did not knowingly omit items from their Schedules.

Buckeye also argues that the bankruptcy court erroneously found that the Debtors did not know their Schedules were incorrect.  The Debtors testified that they had knowledge of the items originally omitted from their Schedules.  However, they also testified that the reason they omitted those items was because they did not think those items needed to be disclosed.  The Debtors, however wrongly, believed that items with little or no value did not need to be disclosed.  A bankruptcy court's findings based on credibility determinations are entitled to significant weight.  *See Gen. Elec. Capital Corp. v. Acosta (In*

*re Acosta)*, 406 F.3d 367, 373 (5th Cir. 2005).  Given the legal standard, this Court, after reviewing the evidence in the record, finds no reason to disturb the bankruptcy court's findings.

### 2. The Debtors amendments negated any showing of fraudulent intent

Next, Buckeye argues that the bankruptcy court clearly erred in finding that the Debtors voluntarily amended their Schedules because it was Buckeye's pending discovery motions that spurred the Debtors to amend their Schedules.  The Debtors, in turn, argue that Buckeye failed to raise this issue in the bankruptcy court.  In response, Buckeye argues that because the Debtors offered no explanation as to why they amended their Schedules, it was "incumbent on the bankruptcy court" to review the entire record to determine why the Debtors decided to amend.

An argument not raised before the lower court cannot be asserted for the first time on appeal. *Stokes v. Emerson Elec. Co.*, 217 F.3d 353, 358 n.19 (5th Cir. 2000).  Because the issue was not raised before the bankruptcy court, the issue should not be considered by this Court.  *Gilchrist v. Westcott (In re Gilchrist)*, 891 F.2d 559, 561 (5th Cir. 1990).

Moreover, even if the issue was properly raised before the bankruptcy court, the Court, after reviewing all of the evidence in the record, is not left with a definite and firm conviction that the bankruptcy court made a mistake in finding that the Debtors voluntarily amended their Schedules.  The docket sheet indicates that on June 24, 2005, Buckeye filed an application for examination of the debtors under Rule 2004; a motion for appraisal of the Debtors' real property; a motion for subpoena of the Debtors' records; and a motion to extend time to file complaint to determine dischargeability. Not only did Buckeye fail to place these motions into evidence, but Buckeye failed to present any evidence indicating whether these motion would spur the Debtors to amend.

There is evidence, however, that the only reason the Debtors decided to amend their schedules

on July 8, 2008 was because the Debtors, on their own, felt apprehension about their original filing. The only argument presented to the bankruptcy court as to what encouraged the Debtors to amend was the Debtor's counsel who argued in closing statement: "Nobody instigated that.  The Trustee didn't instigate it.  A creditor didn't instigate it.  On their own they were apprehensive and concerned about meeting their duty under the Bankruptcy Code."  Having reviewed the evidence, the Court overrules Buckeye's point of error.

### 3. The bankruptcy court considered whether the Debtors acted with fraudulent intent

In its next issue, Buckeye argues that the bankruptcy court erred in failing to consider whether the Debtors exhibited a reckless disregard for the truth.  For the first time on appeal, Buckeye alleges that the Debtors acted with reckless disregard for the truth when filing their Schedules.[1]  A party may not attempt to assert on appeal an argument that was not raised and tried in the court below.  *Gilchrist v. Westcott (In re Gilchrist)*, 891 F.2d 559, 561 (5th Cir. 1990) ("The district court was correct [in refusing to consider an argument not raised at the appropriate stage in the proceeding], and we do likewise.  It is well established that we do not consider arguments or claims not presented to the bankruptcy court.").  Accordingly, any argument that the bankruptcy court failed to consider whether the Debtors exhibited a reckless disregard should not be considered by this Court.

However, even if the argument was properly raised, the bankruptcy court did not err in failing to specifically find that the Debtors did not act with reckless disregard for the truth.  The bankruptcy court specifically found that the Debtors did not act with fraudulent intent.  One way to prove that a

---

[1] Buckeye did not allege that the Debtors acted with reckless disregard for the truth in its original complaint, the proposed pretrial order, its proposed findings of fact, or anytime during the trial.  Buckeye seems to assume that the bankruptcy court was "incumbent" to specifically find that the Debtors did not act with reckless disregard for the truth even though Buckeye never made that allegation.

debtor acted with fraudulent intent is to produce evidence that the debtor exhibited a reckless disregard for the truth. *See Sholdra v. Chilmark (In re Sholdra)*, 249 F.3d 380, 382 (5th Cir. 2001). Consequently, a finding that a debtor did not act with fraudulent intent necessarily includes a finding that the debtor did not act with reckless disregard for the truth. Because Buckeye never argued that the Debtors acted with reckless disregard for the truth, the Court refuses to burden the bankruptcy court with the responsibility of specifically finding that the Debtors did not act with reckless disregard for the truth. The Court, therefore, overrules this point.

Buckeye further argues that the bankruptcy court clearly erred in failing to find that the Debtors filed their original and amended Schedules with intent to defraud and with reckless disregard for the truth. As stated before, a Section 727(a)(4)(A) denial of discharge requires a showing that the false statement was made "knowingly and fraudulently." 11 U.S.C. § 727(a)(4)(A). The court may infer fraudulent intent when the debtor has exhibited a reckless disregard to the truth. *See In re Sholdra*, 249 F.3d at 382. A reckless disregard for the truth may be shown by the existence of more than one falsehood. *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992) (citing *In re Sanders*, 128 B.R. 963, 972 (Bankr. W.D. La. 1991)). Claims of honest confusion, a lack of understanding, or reliance on poor legal advice may negate fraudulent intent. *See Stanton v. Temecula Valley Bank (In re Stanton)*, No. H-07-670, 2007 WL 2538431, at *5 (S.D. Tex. Aug. 31, 2007); *Hatton v. Spencer (In re Hatton)*, 204 B.R. 477, 484 (Bankr. E.D. Va. 1997). Further, taking the opportunity to clear up inconsistencies and omissions may also be considered in determining whether the debtor acted with fraudulent intent. *See In re Sholdra*, 249 F.3d at 383; *The Cadle Co. v. Preston-Guenther (In re Guenther)*, 333 B.R. 759, 768 (Bankr. N.D. Tex. 2005); *Oldendorf v. Buckman*, 173 B.R. 99, 105 (E.D. La. 1994).

### a. The Debtors filed their original schedules without fraudulent intent

Buckeye argues that the sheer volume of omissions and misstatements in the Debtors' original Schedules establishes that the Debtors filed their Schedules in reckless disregard for the truth as a matter of law.  The evidence demonstrates that the Debtors corrected seventy-five items when they voluntarily amended their Schedules the day before the 304 creditor meeting.  The Debtors testified that when they filed their original Schedules they thought that the items they later included did not have to be disclosed and when they felt apprehension about their original Schedules, they sought out advice from two new attorneys.  They also testified that they amended without any creditor or trustee insistence.  In light of that evidence, the Court cannot find as a matter of law that the Debtors filed their original schedules in reckless disregard for the truth.

As to Buckeye's argument that the bankruptcy court clearly erred in failing to find that debtors filed their original schedules with fraudulent intent and in reckless disregard for the truth,  "'A bankruptcy court's determination that a debtor did not act with the intent to deceive is a finding of fact' and subject to the clearly erroneous standard of review."  *Cadle Co. v. Orsini*, No. 4:06-cv-203, 2007 WL 1006919, at *11 (E.D. Tex. 2007) (quoting *In re Hudgens*, 149 F. App'x 480, 486 (7th Cir. 2005)). Having reviewed the evidence in the record, specifically the bankruptcy court's reliance on the Debtors' voluntary amendment, the Court cannot find  that the bankruptcy court erroneously found that the Debtors did not act with fraudulent intent when their filed their original schedules.

### b. The Debtors filed their amended schedules without fraudulent intent

Buckeye also argues that the Debtors filed their amended Schedules with intent to defraud and with reckless disregard for the truth.  Specifically, Buckeye alleges that the Debtors gave a misstatement of their income, failed to disclose income generating rental property, failed to schedule valuable stamp

and coin collections, omitted numerous items of household property, and significantly deflated the value of their household goods.

### i. Monthly income

Buckeye argues, for the first time on appeal, that even after the Debtors amended their Schedules, the Debtors continued to grossly misrepresent their monthly income.  In the Schedules, Vernon Laux stated that his year-to-date income in June 2005 was $112,494.43.  However, Laux also stated that his estimated average monthly income, representing both salary and commission, was only $4,583.34 and that "[b]ased on pending deals, debtor feels he has the potential to make $24,000 in commission by December 2005."  After prorating Laux's year-to-date income of $112,494.43, Buckeye argues that Laux's actual prorated monthly income was $18,750.00, and thus, the Debtors' grossly misrepresented their monthly income.

Unfortunately, the bankruptcy court did not receive the same math lesson concerning the Debtors' monthly income.  Before the bankruptcy court, Buckeye failed to argue that the Debtors grossly misrepresented their monthly income.  Again, an argument not raised before the trial court cannot be asserted for the first time on appeal.  *See Stokes v. Emerson Elec. Co.*, 217 F.3d 353, 358 n.19 (5th Cir. 2000).  If Buckeye desired to preserve this argument for appeal, Buckeye needed to "press and not merely intimate the argument during the proceeding before the" bankruptcy court.  *F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994).

Nonetheless, even if Buckeye preserved this argument for appeal, the Court, after considering the evidence that the Debtors may have misrepresented their monthly income but correctly stated their year-to-date income, is not left with a firm conviction that the bankruptcy court clearly erred in determining that the Debtors did not file their Schedules with fraudulent intent.

### ii. Rental property

The Debtors did not disclose in their Schedules that Vernon Laux controlled rental property. Vernon Laux's mother passed away prior to the filing of the Debtor's bankruptcy and bequeathed rental property to her grandchildren in trust,  with Vernon Laux as Trustee.   In the Debtors' Schedules, the Debtors stated that they did not hold or control any property owned by another person.  However, the parties stipulated that Vernon Laux controlled rental property.   Buckeye argues that the failure to disclose the property Laux controlled is evidence that the Debtors acted with fraudulent intent when they filed their Schedules.

The evidence in the record demonstrates that the Debtors did not believe that they had to disclose the property because they did not feel that they owned the property.  Vernon Laux's mother's will clearly stated that he would not receive any of her property.  The Debtors also testified that the Debtors used all of the rental income from the property to pay the property's mortgage.  In light of this evidence, the Court cannot find that the bankruptcy court clearly erred in finding that the Debtors did not act with fraudulent intent when they failed to disclose the rental property.

### iii. Coin and Stamp Collections

Buckeye argues that the Debtors failure to disclose their coin and stamp collections is evidence that the Debtors filed their Schedules with fraudulent intent.  When applying for the loan, the Debtors claimed to own jewelry, silver, coin and stamp collections, antiques, and artifacts worth $96,000.  The parties stipulated that Pamela Laux gave the coin and stamp collections to her father for his birthday. Buckeye now contends that Pamela Laux repudiated the stipulation.

At trial, Pamela Laux testified that she had given her father the coin and stamp collections for his birthday in 2000.  She did not know the value of the collections and gave it to her father to research

the value.  Her father later lost interest in researching the collections, and as a result, the Debtors could not place a specific value on the collections.  She later stated that she could get the collections back and would bring the collections back into the estate if that was "what they want."

Buckeye argues that because the Debtors only gave the coin and stamp collections to Pamela Laux's father for research purposes, the Debtors should have disclosed the collections in their Schedules.  The Debtors argue that if the collections had been given to her father for research purposes only, it would logically follow that the Debtors would have expected the return of the collections when her father lost interest in them. Instead, Laux testified that she could get the collections back.  This availability is in line with a loving parent's willingness to return a gift to a child if there was a need or a problem with him keeping it.

Having considered the stipulation and Laux's testimony concerning the collections, the Court cannot find that the failure to include the collections is evidence that the bankruptcy court clearly erred in finding that the Debtors did not act with fraudulent intent.

### iv. Household property

Buckeye also argues that the Debtors omitted numerous items of household property.  Buckeye's appraisal of the Debtors' property catalogued nearly $47,000 of household items as opposed to the Debtor's catalogue of $17,000.  Buckeye points out that the Debtors omitted nearly all of their household appliances, scheduling only one freezer, washing machine, and dryer.  According to the appraisal, the Debtors owned five refrigerators and freezers, two dishwashers, and several other expensive appliances.  The Debtors argue that because they believed those appliances were fixtures, they accounted for those items in the evaluation of their real property.

Assuming the Debtors accounted for those appliances in calculating the value of their real

property, Buckeye further argues that the Debtors omitted and grossly undervalued may other items. The Debtors did mention five television sets but failed to include the Debtors' ceiling mounted video projection and projection screen in the Debtor's media room.  The Debtors' also failed to list their universal gym, weight set, and sports gear.  The Debtors scheduled "lawn furniture" for $150. According to Buckeye, this single entry hardly describes the large inventory of outdoor furniture the Debtors actually owned.

In response to Buckeye's appraisal, the Debtors, raised a question as to the credibility of the appraisal.  The Debtors testified that the appraiser valued both greenery and a broken vase at $150. Further, the appraiser valued a dining room set for $400 less than the set was purchased for over ten years ago–before the dogs chewed it and the kids tore it up.  The Debtors also testified that they, as they had been instructed, valued the items they listed at a price their believed the property would sell for at a garage sale.

In light of the Debtors' testimony, the Court is not left with a firm conviction that the bankruptcy court clearly erred in finding that the Debtors did not act with fraudulent intent when they filed their Schedules.

### c. The bankruptcy court's findings of fact are not clearly erroneous

Having reviewed the record in this case, the Court concludes that it is plausible that the Debtors acted without fraudulent intent and without reckless disregard for the truth in filing their Schedules. Although the evidence that the Debtors may have omitted personal items of property might support an inference of an intent to deceive, "it does not compel such a finding and does not require [the Court] to reverse the [bankruptcy] court's holding." *Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 374 (5th Cir. 2005) (quoting *Palmacci v. Umpierrez*, 121 F.3d 781, 790 (1st Cir. 1997)).  The

Court, therefore, affirms the finding that Buckeye failed to prove that the Debtors made false statements with fraudulent.

## C. Section 727(a)(2)

In its next issue, Buckeye argues that the bankruptcy court erred in granting judgment to the Debtors on Buckeye's Section 727(a)(2) claim because Buckeye demonstrated the Debtor's fraudulent intent and the court failed to consider whether the Debtors' reckless disregard for the truth satisfied the intent requirement.  Under Section 727(a)(2) of the Bankruptcy Code, a debtor's discharge shall be denied when "the debtor, with intent to hinder, delay, or defraud a creditor . . ., has transferred, removed, destroyed, mutilated, or concealed property of the debtor within one year before the filing of the petition; or property of the estate, after the date of the filing of the petition." 11 U.S.C. § 727(a)(2). Therefore, to establish that the Debtors' discharge should be denied pursuant to § 727(a)(2), the plaintiff must prove by a preponderance of the evidence: (1) the existence of a transfer, removal, destruction, mutilation, or concealment of property; (2) belonging to the debtor; (3) within one year of the filing of the petition; and (4) with intent to hinder, delay, or defraud a creditor of the estate.  *See Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 90 (5th Cir. 1989).

### 1. The bankruptcy court considered whether the Debtors acted with fraudulent intent

Buckeye argues that the bankruptcy court failed to consider whether the Debtors acted with reckless disregard for the truth when determining whether  the Debtors acted with intent to defraud a creditor.  Similar to Buckeye's claim under Section 727(a)(4)(A), Buckeye failed to raise this argument before the bankruptcy court.  Again, an argument not raised before the trial court cannot be asserted for the first time on appeal.  *See Stokes v. Emerson Elec. Co.*, 217 F.3d 353, 358 n.19 (5th Cir. 2000).

However, even if the Court considered the argument, as previously discussed, the bankruptcy

court's finding that the Debtors did not act with intent to defraud a creditor necessarily includes a finding that the Debtors did not act with reckless disregard for the truth.   Therefore, as with the Section 727(a)(4)(A) claim, the Court finds that the bankruptcy court did not err in failing to include a specific finding that the Debtors did not act with reckless disregard for the truth.

## 2. The bankruptcy court's findings of fact are not clearly erroneous

Buckeye also appears to be arguing that the bankruptcy court clearly erred in finding that the Debtors did not conceal assets without the intent to defraud the Debtors' creditors.   As evidence that the bankruptcy court clearly erred, Buckeye focuses on the Debtors' alleged failure to schedule numerous assets.   As the Court previously found, the alleged failure to schedule numerous assets does not leave the Court with a firm conviction that the bankruptcy court erred in finding that Buckeye failed to prove that the Debtors concealed assets with the intent to default their creditors.

Buckeye also argues that the bankruptcy court clearly erred in finding that the Debtors did not destroy property with the intent to defraud.   The Debtors testified that a month before filing for bankruptcy, the Debtors cleared out their two self-storage units.   The first unit contained items of little or no value, such as displays, boxes, pallets, samples, and outdated cards related to Pamela Laux's defunct business.   The other unit contained various personal items belonging to Vernon Laux's parents. These items included an old mattress, children's toys, scrapbook items, and carousels.   Those items with little or no value were discarded.   Some items, such as the children's toys, were donated, and the remaining items were relocated to the Debtor's garage.

Buckeye argues that it proved that the Debtors destroyed the above mentioned property with intent to defraud their creditors because the Debtors discarded the property a month before filing for bankruptcy.   Buckeye contends that a debtor, acting in good faith, would have continued to store those

items in the units if the debtor was going to soon file for bankruptcy.  The Court disagrees, and after reviewing the evidence in the record, the Court is not left with a firm conviction that the bankruptcy erred in determining that Buckeye failed to prove that the Debtors destroyed property with intent to defraud their creditors.  The Court, therefore, overrules Buckeye's point of error.

### D. Section 727(a)(3)

In its third issue, Buckeye argues that the bankruptcy court erred in grating judgment to the Debtors on Buckeye's Section 727(a)(3) cause of action because the Debtors destroyed and failed to maintain documents, records, and papers.  Section 727(a)(3) provides: "The court shall grant a debtor discharge, unless . . . the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all circumstances of the case."  11 U.S.C. § 727(a)(3).

First, Buckeye argues that the Debtors destroyed the records of one of their closely held businesses.  The Court has found no evidence that the Debtors destroyed the records of any of their businesses.  Thus, the Court, overrules this point.

Next, Buckeye argues that the Debtors failed to keep records of what they maintained at the self-storage units.  Under Section 727(a)(3), "[t]he plaintiff bears the initial burden of proving that the debtor's financial records are inadequate and that this failure prevented the plaintiff from ascertaining the debtor's financial condition." *Chemoil, Inc. v. Pfeifle (In re Pfeifle)*, 154 F. App'x 432, 433 (5th Cir. 2003) (citing *Robertson v. Dennis (In re Dennis)*, 330 F.3d 969, 703 (5th Cir. 2003).  "If this burden is met, the burden shifts to the debtors to show that the inadequacy is justified under all of the circumstances."  *Id.* (citing *In re Dennis*, 330 F.3d at 703).  An individual debtor "is not required to

keep an immaculate set of books and records of his personal financial transactions." *In re Dennis*, 330 F.3d at 703.   The true inquiry for the court is whether the level of record-keeping employed by the debtors is appropriate given the nature of their particular circumstances.   *See Gross v. Russo (In re Russo)*, 3 B.R. 28, 34 (Bankr. E.D.N.Y. 1980).   The bankruptcy court has "wide discretion in determining whether books or records are adequate under the terms of the statute and the facts of each case."   *Goff v. Russell Co. (In re Goff)*, 495 F.2d 200, 202 (5th Cir. 1974).   The bankruptcy court's findings as to whether the debtor maintained adequate records "should not be disturbed unless there is a clear abuse of discretion."   *Id.*

The bankruptcy court found that it was unreasonable to require the Debtors to keep an inventory of the items they placed into or removed from their private self-storage units in order to receive a discharge.   In its appeal, Buckeye failed to point to any evidence that would indicate that the bankruptcy court clearly erred in making that determination.   The Court, having reviewed all of the evidence in the record, finds no reason to disturb the bankruptcy courts' findings.

## E. Section 727(a)(5)

Finally, Buckeye argues that the bankruptcy court erred by failing to deny the Debtors discharge under Section 727(a)(5).   Section 727(a)(5) creates an exception to discharge where "the debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities."   11 U.S.C. § 727(a)(5).   "To establish a prima facie case, the creditor 'must prove which assets are missing.'"   *Guerriero v. Kilroy, (In re Kilroy)*, 354 B.R. 476, 498 (Bankr. S.D. Tex. 2006) (quoting *Martin Marietta Materials Sw., Inc. v. Lee (In re Lee)*, 309 B.R. 468, 478 (Bankr. W.D. Tex. 2004)).   "Once the creditor [establishes] a prima facie case, 'the burden then shifts to the debtors to provide a satisfactory explanation for that loss.'"   *Id*. (quoting *In re Lee*, 309 B.R. at 478).   Whether a

debtor has satisfactorily explained a loss of assets is a question of fact reviewed for clear error.  *See The Cadle Co. v. Andrews (In re Andrews)*, 98 F. App'x 290, 293 (5th Cir. 2004).

In arguing that the bankruptcy court clearly erred in failing to deny discharge under Section 727(a)(5), Buckeye points to the loss in value of the $96,000 asset collection, the loss of available cash assets previously available to the Debtors, and the loss of property previously stored in the Debtors' self-storage units.

In their application for the loan, the Debtors stated that they owned valuable jewelry, silver, coin and stamp collections, antiques, and artifacts valued at $96,000.  The evidence in the record demonstrates that the Debtors gave the coin and stamp collections to Pamela Laux's father as a birthday gift.  The jewelry, they believed to be worth $40,000, was stolen in 2000.  Further, the Debtors accounted for jewelry, silver, and antiques in their Schedules.  In light of this evidence, the bankruptcy court's ruling that the Debtors offered satisfactory explanations for the diminished value of the asset collection is not clearly erroneous.

As to the loss of available cash assets previously available to the Debtors, the Court finds that Buckeye failed to raise this argument before the bankruptcy court.  The Court will not disturb the bankruptcy court's findings of fact based upon an argument presented for the first time on appeal.  *See Vogel v. Veneman*, 276 F.3d 729, 733 (5th Cir. 2002).  Nonetheless, even if the Court were to consider the issue, based on the evidence in the record, the Court cannot find that the bankruptcy court clearly erred in determining that the Debtors have satisfactorily explained any loss of assets or deficiency of assets to meet the debtor's liabilities.

And finally, as to the loss of property previously stored in the Debtors' self-storage units, the debtors testified that with the exception of the donated children's toys, they moved anything of value

to their garage and discarded the rest.  The Debtors testified that they accounted for the items moved to the Debtors' garage in their Schedules.  In light of this evidence, the Court is not left with a firm conviction that the bankruptcy court clearly erred in determining that the Debtors satisfactorily explained any loss of assets.  Therefore, the Court overrules Buckeye's last point of error.

### III. CONCLUSION

For the reason previously stated, the United States bankruptcy judge did not commit reversible error in holding that Vernon and Pamela Laux's debts were subject to discharge.  Accordingly, the opinion of the United States Bankruptcy Court for the Eastern District of Texas, in the above-styled matter, is AFFIRMED.

**SIGNED this 26th day of March, 2008.**

MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE